1  JOHN S. LEONARDO
   United States Attorney
2  District of Arizona
   M. BRIDGET MINDER
3  Arizona State Bar No. 023356
   Assistant U.S. Attorney
4  Two Renaissance Square
   40 North Central Avenue, Suite 1200
5  Phoenix, Arizona 85004-4408
   Telephone: (602) 514-7500
6  mary.minder@usdoj.gov

7           IN THE UNITED STATES DISTRICT COURT

8              FOR THE DISTRICT OF ARIZONA

9   IN RE:
10  Request from the United Kingdom              No.
    Pursuant to the Instrument Between the
11  Government of the United States of      **APPLICATION FOR ORDER**
    America and the United Kingdom          **PURSUANT TO 18 U.S.C. § 3512**
12  Implementing the Agreement on Mutual
    Assistance Between the United States and
13  the European Union in Criminal Matters in
    the Matter of Simon Higginson.
14
15

16        The United States petitions the Court for an order appointing AUSA M. Bridget

17  Minder as a commissioner to collect evidence from witnesses and take other actions

18  necessary to execute the attached request for assistance from the United Kingdom (the

19  "Request"). This petition is based on 18 U.S.C. § 3512, Article I of the Treaty between

20  the United States of America and the United Kingdom of Great Britain and Northern

21  Ireland concerning Mutual Assistance in Criminal Matters (as implemented by the

22  Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance

23  between the United States and the European Union signed June 25, 2003) (the "Treaty"),

24  and the Court's own inherent authority.

25        As set forth in the Request, the United Kingdom seeks evidence regarding a bank

26  account, domain name, and email accounts used to defraud a U.K.-based insurance

27  company. If appointed, undersigned counsel intends to issue subpoenas, conduct

28  interviews, obtain warrants, and take other actions as necessary to execute the Request.

**Memorandum of Points and Authorities**

**A.     Request from the United Kingdom**

The Central Authority for United Kingdom makes this Request in connection with an ongoing criminal investigation.  The Crown Prosecution Service, Specialized Fraud Division, and the City of London Police are investigating Simon Higginson and others for conspiracy to defraud, fraud by abuse of position, and money laundering.  Higginson worked as an insurance broker for the Willis Group Ltd. ("Willis Group"), an international insurance company headquartered in London.  The investigation revealed that Higginson, while working at Willis Group, created Enargee Consulting Ltd. ("Enargee") and Brokermarine, which purported to be insurance consultants providing services to Willis Group.  Through Enargee and Brokermarine, Higginson and his associate, Lee Willis, caused Willis Group to deposit funds totaling $2,300,000 into accounts that Higginson and Willis controlled.  In furtherance of the alleged offenses, Higginson and Willis opened a bank account for Enargee, created and utilized a domain name for Enargee, and created and utilized email accounts related to Enargee and Brokermarine, which are the subject of the Request.

**1.     Enargee Consulting Ltd.**

Between December 2005 and December 2010, Willis Group paid Enargee approximately $1,000,000 for "introduction services."  Higginson represented to Willis Group that Enargee was run by a man named Nigel Gladwell.  But Higginson and Willis, not Gladwell, appear to have controlled Enargee.  When law enforcement interviewed Gladwell, he denied any knowledge or involvement in Enargee and claimed to be a victim of identity theft.  Northern Trust Bank records for Enargee confirm that Gladwell did not control the account or receive payments.  Instead, the sole signatory was Willis.  Money paid into Enargee's account was paid to, among others, Willis ($601,130.71), Higginson ($165,000), and Higginson's wife, Lydia ($73,415.99).

In a January 17, 2014, signed statement, Higginson stated:

- Higginson set up Enargee with Willis as the sole shareholder and owner.

- Higginson set up Enargee's bank account with the Northern Trust Bank in Miami, Florida, with Willis as the sole signatory.
- Gladwell had no involvement with Enargee and received no money from it.
- Emails purporting to be from Gladwell related to Enargee were actually from Higginson.
- Higginson created the website "www.enargeeconsulting.com" using Gladwell's name as the registrant. (The domain name "www.enargeeconsulting.com" is owned by GoDaddy.com and is associated with the email address "mail@enargeeconsulting.com.")
- Higginson also was responsible for creating the e-mail address "nigel.gladwell@hotmail.co.uk," which was used as a contact for Enargee, without Gladwell's knowledge or permission.

## 2. Brokermarine

Brokermarine was an Ecuadorian company set up by an Ecuadorian national, Juan Carlos Gonzalez Mena, a lawyer and insurance expert. Higginson and Willis, however, appear to have controlled Brokermarine's bank account; during a search of Higginson and Willis's shared residence, law enforcement seized bank statements in the name of Brokermarine. From 2003 until 2012, Willis Group paid approximately $1,300,000 in purported commission payments to Brokermarine's bank account, which then were shared by Gonzalez Mena, Higginson, and Willis. Gonzalez Mena received approximately $91,000, Higginson $57,000; and Willis $20,000 directly from Brokermarine's bank account. Funds also were transferred from Brokermarine's account to another bank account and, from there, Gonzalez Mena received approximately £63,000; Higginson £137,000; and Willis £150,974.

The email address "brokermarine@hotmail.com" was used to conduct communications between Willis Group and Brokermarine. A subscriber check on the email "brokermarine@hotmail.com" account shows it was registered on April 21, 2012 to the post code KT21 2HF, the same post code of Higginson's mother's home address.

The last log in IP address, 80.229.0.122, is the same IP address used to register and login to the "nigelgladwell@hotmail.co.uk" e-mail address, which Higginson admitted he was responsible for creating.

**3.     Evidence Sought**

In furtherance of their investigation, United Kingdom authorities seek the following evidence:

1.     From GoDaddy.com in Scottsdale, Arizona:  IP details, full account holder and payment details, and all records and correspondence relating to the email account "mail@enargeeconsulting.com" and the domain name "enargeeconsulting.com."

2.     From Microsoft in Redmond, Washington:  account information, customer notes, IP history, and contents of the e-mail account for the accounts "nigelgladwell@hotmail.co.uk" and "brokermarine@hotmail.com."

3.     From Northern Trust Bank in Miami, Florida:  bank account records for Northern Trust Bank account number ████9010, in the name of Enargee Consulting Ltd, including monthly statements, account opening documentation, customer notes, all debit and credit slips, and details of any linked accounts.

Federal courts, pursuant to the Treaty, statute, and their inherent authority, may issue orders as may be necessary for the production of the evidence requested by the United Kingdom including orders appointing a person as a commissioner to gather such evidence and establishing the procedures for the production of such evidence.

**B.     Authority to Execute the Request**

**1.     The Treaty**

A treaty constitutes the law of the land.  U.S. Const. Art. VI.  The provisions of a treaty have equal footing with acts of Congress and are binding on the courts.  *Asakura v. City of Seattle*, 265 U.S. 332, 341 (1924); *United States v. The Peggy*, 5 U.S. 103 (1801); *In re Comm'rs Subpoenas*, 325 F.3d 1287, 1291 (11th Cir. 2003), *abrogation in other part recognized by In re Clerici*, 481 F.3d 1324, 1333 n. 12 (11th Cir. 2007).  To the extent that the provisions of a treaty are inconsistent with a preexisting statutory

provision, the treaty supersedes the statute.  *Zschernig, et al. v. Miller, Adm'r, et al.*, 389 U.S. 429, 440 441 (1968); *In re Comm'rs Subpoenas*, 325 F.3d 1287, 1305 1306 (11th Cir. 2003); *United States v. Erato*, 2 F.3d 11, 15-16 (2d Cir. 1993).

In accordance with the provisions of the Treaty, each state is obliged to provide assistance to the other for the purpose of proceedings as defined in Article 19 of the Treaty.  Article 19 defines "proceedings" as "proceedings related to criminal matters and includes any measure or step taken in connection with the investigation or prosecution of criminal offenses …."  Each state contemplated that it would provide the other with assistance generally comparable to that which is available to its own law enforcement authorities, which assistance includes taking testimony or statements of persons, providing documents and other evidence, and immobilizing criminally obtained assets. Treaty, Article I (2); *Barr v. United States Dep't of Justice*, 645 F. Supp. 235, 237 (E.D.N.Y. 1986), *aff'd*, 819 F.2d 25 (2d Cir. 1987).

The Treaty and 18 U.S.C. § 3512 empower federal courts to execute treaty requests to comply with the United States' treaty obligations.  Article 5 of the Treaty provides that: "The courts of the Requested Party shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request."  The Treaty contemplates that federal courts will use compulsory measures to execute such requests. Article 8 (1) of the Treaty provides that: "A person in the territory of the Requested Party from whom evidence is requested pursuant to this Treaty may be compelled, if necessary, to appear in order to testify or produce documents, records, or articles of evidence by subpoena or such other method as may be permitted under the law of the Requested Party."

The Treaty imposes no dual criminality requirement as a precondition for providing assistance.  Consequently, each state party is obligated to provide assistance without regard to whether the conduct under investigation or prosecution would constitute an offense under the laws of the Requested State, except as otherwise provided by U.S. law.  *See* Letter of Submittal to the President of the United States from Secretary

of State, dated January 6, 1995; 1994 U.S.T. LEXIS 203.

### 2. Statutory Authority Grounding Execution of Requests for Assistance

The Treaty is designed to be self-executing and requires no implementing legislation. *See* Letter of Submittal to the President of the United States from Secretary of State, dated January 6, 1995; 1994 U.S.T. LEXIS 203; *In re Comm'rs Subpoenas*, 325 F.3d at 1291. But because the procedural provisions in many treaties are minimal, in the past federal courts routinely utilized procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute treaty requests from foreign authorities. *In re Comm'rs Subpoenas*, 325 F.3d at 1305-1306. Substantive U.S. law regarding searches, seizures, and other compulsory processes further grounded the execution of such assistance requests.

On October 19, 2009, the President signed the Foreign Evidence Request Efficiency Act of 2009 (Public Law 111 79), enacting 18 U.S.C. § 3512, the full text of which is attached as Exhibit A for the convenience of this Court. Section 3512 explicitly authorizes a federal court to:

> issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.

Section 3512 directly empowers the federal courts to execute such requests and separately codifies under Title 18 the longstanding practice and procedures employed by the United States and the federal courts to execute requests by foreign authorities for assistance to the fullest extent possible under U.S. law. Congress enacted Section 3512 to make it "easier for the United States to respond to these requests by allowing them to be centralized and by putting the process for handling them within a clear statutory system." 155 CONG. REC. S6,810 (2009) (Statement of Sen. Whitehouse).

### C. Execution of Foreign Requests Under the Treaty and Section 3512

#### 1. Authorization of the Application to This Court

Section 3512 provides:

Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation and prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing and restitution.

For purposes of Section 3512, an application is "duly authorized by an appropriate official of the Department of Justice" when the Department of Justice, Criminal Division, Office of International Affairs, has reviewed and authorized the request and is executing the request itself or has delegated the execution to another attorney for the government. In this matter, such authorization and delegation is evidenced by a letter, Attached as Exhibit B, dated October 19, 2015 from the Department of Justice, Criminal Division, Office of International Affairs, received by the United States Attorney, transmitting the Request to this district for execution.

Section 3512(c) authorizes filing the instant application in this district, where some of the evidence is located.

### 2.    Foreign Authority Within Section 3512 and the Treaty

As to the "foreign authority" making the Request, Section 3512(h) provides:

The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

In this matter the Secretary of State for the Home Department is the designated Central Authority in the United Kingdom for requests made pursuant to the Treaty.

As evidenced by the Request itself and confirmed in the authorization process and again by the undersigned, consistent with Section 3512(a)(1), the foreign authority seeks assistance in the investigation or prosecution of criminal offenses or in proceedings related to the prosecution of criminal offenses.

### 3. Authority of the Federal Courts Under Section 3512

When enacting Section 3512, Congress intended that federal courts facilitate to the fullest extent possible the execution of requests by foreign authorities for assistance in criminal matters and endeavored to streamline and expedite the execution of such requests. Section 3512 authorizes federal courts to issue "such orders as may be necessary to execute a request" and specifically includes: orders for search warrants pursuant to Federal Rule of Criminal Procedure 41; orders for stored wire or electronic communications and related evidence under 18 U.S.C. § 2703; orders for pen registers and trap and trace devices under 18 U.S.C. § 3123; orders for the provision of testimony or a statement or the production of documents or other things, or both; and orders appointing "a person" to direct the taking of testimony or statements or the production of documents or other things, or both. 18 U.S.C. § 3512(a)(1)-(2).

The assistance requested by the United Kingdom pursuant to the Treaty by its Secretary of State of the Home Department in the instant Request falls squarely within that contemplated by both the Treaty and Section 3512.

### D. Appointment of a Person as Commissioner to Collect Evidence

#### 1. Statutory Authorization

Section 3512(b) provides that a federal judge may "issue an order appointing a person to direct the taking of testimony or statements or of the production of documents or other things, or both." The statute further authorizes the person appointed to: issue orders requiring the appearance of a person, or the production of documents or other things, or both; administer any necessary oath; and take testimony or statements and receive documents or other things. Commensurate with past practice under 28 U.S.C. § 1782, it is anticipated that a federal court would appoint an attorney for the government, typically a federal prosecutor, as "commissioner."

#### 2. Procedures for Evidence Collection

Section 3512(a) specifically empowers a federal judge to issue such orders as may be "necessary" to execute the request. This authorization encompasses orders specifying

the procedures to be used to collect particular evidence, including procedures requested by the foreign authority to facilitate its later use of the evidence.  In executing a request made pursuant to a treaty, a court has the obligation to prescribe effective and expeditious procedures designed to promote the purpose of the treaty.  *See In re Comm'rs Subpoenas*, 325 F.3d at 1305.  Nothing in Section 3512 suggests any limitation on a court's power to exercise complete discretion in prescribing the procedure to be followed as was available under 28 U.S.C. § 1782.  *In re Letter of Request from the Crown Prosecution Serv. of the United Kingdom*, 870 F.2d 686, 693 (D.C. Cir. 1989), citing 1964 U.S.C.C.A.N. at 3789.  *See White v. Nat'l Football League, et al.*, 41 F.3d 402, 409 (8th Cir. 1994), *cert. denied*, 515 U.S. 1137 (1995) (a court may issue whatever process it deems necessary to facilitate disposition of a matter before it); Fed. R. Crim. P. 57(b).

### a.    Procedures Authorized by Other Statutes

In addition, Section 3512 references specific U.S. laws for obtaining certain evidence and, by doing so, adopts any statutorily mandated procedures in relation to obtaining orders for search warrants; orders for contents of stored wire or electronic communications or for records related thereto; and orders for a pen register or a trap and trace device.

### b.    Order by the Person Appointed; Commissioner Subpoenas

Section 3512 authorizes the "person" appointed (here, and in past practice under 28 U.S.C. § 1782, the "commissioner") to issue orders "requiring the appearance of a person, or the production of documents or other things or both."  Further, Article 5 of the Treaty provides for the issuance of procedural documents, such as subpoenas, to gather evidence:  "The courts of the Requested Party shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request."

If a federal district court so orders, the commissioner may use a commissioner's subpoena to obtain the requested evidence.  *See In re: Comm'rs Subpoenas*, 325 F.3d at 1291 (incorporating in pertinent part a district court's order directing use of commissioner's subpoenas); *United States v. Erato*, 2 F.3d 11, 13-14 (2d Cir. 1993)

1  (same).  This commissioner's subpoena is simply a version of the "order" to be issued by

2  the person appointed by the court under Section 3512 to direct the production of

3  evidence. Section 3512 expressly authorizes the service and enforcement of such orders,

4  or commissioner's subpoenas, anywhere in the United States (i.e., coextensive with the

5  service of subpoenas in U.S. criminal investigations and prosecutions).

6           **c.**      **Notice of Evidence Taking**

7        This application is being made ex parte, consistent with U.S. practice in its

8  domestic criminal matters and its prior practice on behalf of foreign authorities under

9  28 U.S.C. § 1782.  *In re Letter of Request from the Crown Prosecution Serv. of the*

10  *United Kingdom*, 870 F.2d at 688; *In re Letters Rogatory from the Tokyo District, Tokyo,*

11  *Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976).  The Treaty itself contemplates the need for

12  confidentiality with respect to all aspects of the execution of requests. Article 7 (1) of the

13  Treaty provides that: "The Requested Party shall, upon request, keep confidential any

14  information which might indicate that a request has been made or responded to."

15        Both Section 3512 and the Treaty at Article 8 authorize use of compulsory process

16  in the execution of treaty requests comparable or similar to that used in domestic criminal

17  investigations or prosecutions.  Because subpoenas utilized in U.S. criminal proceedings

18  (i.e., grand jury and criminal trial subpoenas) are issued without notice to any party other

19  than the recipients (i.e., no notice to targets or defendants), orders and commissioner's

20  subpoenas issued in execution of treaty requests pursuant to Section 3512 and the

21  applicable treaty likewise should require no notice other than to the recipients.  In the

22  absence of a specific request to provide notice, a district court and U.S. authorities can

23  assume that a requesting foreign authority has provided such notice as the foreign law

24  requires, or that foreign law does not require notice and the requesting foreign authority

25  does not consider notice to be necessary or useful.  Accordingly, a federal district court

26  should authorize a commissioner to collect the evidence requested without notice to any

27  party other than the recipient of the commissioner's subpoena except to the extent that a

28  request asks for specific notice procedures.

### d.      Right to Financial Privacy Act

The Right to Financial Privacy Act, 12 U.S.C. §§ 3401 *et seq*., does not apply to execution of foreign legal assistance requests.  *Young v. United States Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); *In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port Au Prince, Republic of Haiti*, 669 F. Supp. 403, 407 (S.D. Fla. 1987); *In re Letters of Request from the Supreme Court of Hong Kong*, 821 F.Supp. 204, 211 (S.D.N.Y. 1993).  Consequently, to the extent that execution of a request entails production of bank or financial records, notice provisions of the Act do not apply, and the commissioner need not give, nor arrange for the custodian of records to give, notice to an account holder.  (Note that the Act itself applies only to accounts maintained in a person's name and not to corporate, perhaps even partnership, accounts.  *United States v. Daccarett*, 6 F.3d 37, 50-52 (2d Cir. 1993).)

### Conclusion

The instant Request is exactly the type of request contemplated for execution under Section 3512.  In its sequential legislative efforts relevant to the provision of assistance to foreign authorities, Congress intended that the United States set an example to other nations by making judicial assistance generously available.  *See, e.g., In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151, 1153-1154 (11th Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989).  Section 3512 enables the United States to respond "more quickly … to foreign evidence requests. These efforts will assist the United States with its investigations as foreign authorities will be urged to respond in kind to our evidence requests in a speedy manner."  155 CONG. REC. H10,093 (2009) (Statement of Rep. Schiff).

Accordingly, to execute this Request, the government moves this Court to issue the attached order pursuant to the Treaty and 18 U.S.C. § 3512 appointing the undersigned Assistant U.S. Attorney as commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, to obtain the evidence requested, to adopt such procedures in receipt of the evidence as are

consistent with the intended use thereof.

Respectfully submitted this 24th day of November, 2015.

JOHN S. LEONARDO
United States Attorney
District of Arizona

_s/*Mary Bridget Minder*___
M. BRIDGET MINDER
Assistant U.S. Attorney